Ruth HENDERSON et al.

v.

### NEWPORT COUNTY REGIONAL YOUNG MEN'S CHRISTIAN ASSOCIATION.

No. 2007–308–M.P.

Supreme Court of Rhode Island.

March 20, 2009.

Lawrence L. Goldberg, Esq., Warwick, for Plaintiff.

Tracy McDevitt Waugh, Esq., Boston, MA, for Defendant.

Present: FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

**OPINION**

Chief Justice WILLIAMS (ret.), for the Court.

The defendant, the Newport County Regional Young Men's Christian Association (defendant or YMCA), petitioned this Court for a writ of certiorari after a ruling in favor of the plaintiffs, Ruth Henderson, Margaret Lama, and Taylor Lama Henderson (collectively plaintiffs), permitting discovery of a report composed by the Praesidium Group (Praesidium report). Despite the defendant's assertion that the Praesidium report was protected from discovery, the motion justice ordered, after conducting an *in camera* review, the Praesidium report to be produced to the plaintiffs. We granted the defendant's petition and at this time will decide the issues raised therein.

This case came before the Supreme Court for oral argument on March 3, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this case may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we quash the order of the Superior Court.

**I**

**Facts and Travel**

The facts of this case are not in dispute. In 2001, Taylor Lama Henderson allegedly was touched inappropriately by her gymnastics coach at the YMCA, James W. Bell, who was at the time a YMCA employee. According to defendant, it did not discover the inappropriate touching until several young girls reported that Bell inappropriately had touched them during his tenure as their gymnastics coach. Upon

learning of these allegations, defendant reported him to the Middletown Police Department; Bell was arrested for second-degree child molestation on August 7, 2003, in the State of Washington, where he was residing at that time.

The next day, defendant's general counsel recommended to the YMCA Board of Directors that it conduct a review of its staff policies and procedures in light of the allegations made against Bell. The letter specifically included the following language: "This request is made in anticipation of potential litigation, and we trust that all information learned from this review will remain confidential between the Board of Directors and Silva Law Group, Ltd., its legal counsel."

On May 20, 2004, plaintiffs filed suit, asserting that defendant negligently had hired and supervised Bell. The plaintiffs sought damages for the injuries and medical treatment incurred by Taylor Lama Henderson as a consequence of her molestation.

Meanwhile, in compliance with its general counsel's recommendation, defendant retained the Praesidium Group to review the staff policies and procedures at the YMCA and to make recommendations with respect to those policies and procedures. In the summer of 2004, the Praesidium Group conducted a review and prepared a report analyzing the risk-management standards in place at the YMCA. The cover of the report was labeled "Attorney Client Work Product—PRIVILEGED AND CONFIDENTIAL." It was provided only to the YMCA Board of Directors, its executive director, and its general counsel.

When plaintiffs learned of the Praesidium report, they issued a subpoena *duces tecum* to obtain a copy of the report at deposition. The defendant would not provide plaintiffs with a copy, alleging instead that the document was protected from disclosure by the work-product privilege as well as the attorney-client privilege. Insistent on procuring a copy of the Praesidium report, plaintiffs filed a motion requesting an *in camera* review of the report and a determination that the report was, in fact, discoverable. The hearing on plaintiffs' motion was held in August 2007, at which time the motion justice reviewed, *in camera*, the Praesidium report. The next month, the motion justice ruled in favor of plaintiffs, ordering defendant to produce the Praesidium report.

On October 2, 2007, defendant filed a petition for certiorari with this Court; after this filing, the motion justice stayed her order requiring defendant to produce the Praesidium report until this Court ruled on the petition for certiorari. We granted the petition on April 21, 2008, and we now will decide the issue defendant presented with respect to the Praesidium report's discoverability.

## II

## Analysis

Before this Court, defendant asserts that the motion justice erred in ruling that the Praesidium report was discoverable and not protected by the work-product doctrine. The defendant also argues that, because the Praesidium Group was acting as the *de facto* subordinate of its attorney the Praesidium report is protected by the attorney-client privilege as well.

### A

### Standard of Review

 When a case is before this Court on a writ of certiorari, our review is "limited 'to examining the record to determine if an error of law has been committed.'" *Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.*, 891 A.2d

838, 840 (R.I.2006) (*Crowe*) (quoting *State v. Santiago*, 799 A.2d 285, 287 (R.I.2002)). "We do not weigh the evidence on certiorari, but only conduct our review to examine questions of law raised in the petition." *Id.* (citing *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994)). In the instant matter, our undertaking is to determine the effect of Rule 26(b)(2) of the Superior Court Rules of Civil Procedure on plaintiff's discovery request. Because this is an issue of law, we review the matter *de novo*. See *Crowe*, 891 A.2d at 840.

## B

### Work–Product Privilege

■ The provisions of the Superior Court Rules of Civil Procedure pertaining to discovery generally are liberal, and are designed to promote broad discovery among parties during the pretrial phase of litigation. See *Crowe*, 891 A.2d at 839; Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 26:2 (West 2006). Indeed, "[t]he philosophy underlying modern discovery is that prior to trial, all data relevant to the pending controversy should be disclosed unless the data is privileged." *Cabral v. Arruda*, 556 A.2d 47, 48 (R.I.1989) (citing 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2001 at 15 (1970)).

Although generally favoring the reciprocal disclosure of relevant information, the rules of discovery are littered with constraints intended to comport with other competing interests, such as protecting the

privacy of an attorney's work produced in preparation of trial. The seminal case on this issue, decided by the United States Supreme Court more than sixty years ago, held that materials obtained or prepared by an attorney in anticipation of litigation are not be discoverable unless production of those materials are necessary for the preparation of one's own case. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Rule 26 of the Federal Rules of Civil Procedure codified the concept that most written materials "obtained or prepared * * * with an eye toward litigation" were protected from discovery. *Hickman*, 329 U.S. at 511, 67 S.Ct. 385.[1]

Rule 26(b)(1) of the Superior Court Rules of Civil Procedure, in keeping with a policy of broad discovery, reads, in pertinent part: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." Our Rule 26 is quite similar to its federal counterpart. "This [C]ourt has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule." *Crowe*, 891 A.2d at 840 (quoting *Smith v. Johns–Manville Corp.*, 489 A.2d 336, 339 (R.I.1985)).

The most relevant provision is Rule 26(b)(3), which delineates the boundaries of the work-product privilege and states:

"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain

---

1. Rule 26(b)(3) of the Federal Rules of Civil Procedure reads:

 "(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

 But, subject to Rule 26(b)(4), those materials may be discovered if:
 (i) they are otherwise discoverable under Rule 26(b)(1); and
 (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

discovery of documents and tangible things otherwise discoverable under subdivisions (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

■ To determine whether an item is work product, one must look, as a preliminary matter, at "whether, in light of the nature of the document or tangible material and facts of the case, the document can be said to have been prepared or obtained because of the prospect of litigation, by or for an adverse party or its agent." *Cabral*, 556 A.2d at 49; *see also State of Maine v. United States Department of the Interior*, 298 F.3d 60, 68 (1st Cir.2002) (concluding that a document is covered by the work-product privilege as long as it has been prepared because of the prospect of litigation); *United States v. Adlman*, 134 F.3d 1194, 1199–1203 (2d Cir.1998) (same).

■ Indeed, it is not necessary for litigation to have been initiated for a party to successfully invoke the work-product privilege afforded by Rule 26. *Fireman's Fund Insurance Co. v. McAlpine*, 120 R.I. 744, 748–49, 391 A.2d 84, 87 (1978). Rather,

"[T]he protective ambit of Rule 26(b)(2) was not meant to be restricted to material that had been prepared subsequent to the initiation of litigation. On the contrary, * * * the rule was meant to be applied to materials gathered when litigation is merely a contingency. Thus, the rule's privilege may be invoked for materials prepared either in anticipation of litigation or for trial." *Fireman's Fund Insurance Co.*, 120 R.I. at 748–49, 391 A.2d at 87.[2]

■ The work-product privilege comprises two distinct types of work product. The first refers to a document or other written material containing the mental impressions of an attorney or his or her legal theories. *Crowe*, 891 A.2d at 842. It is often termed "opinion" work product and receives the highest level of protection. *Id.* Such opinion work product qualifies for absolute immunity from discovery and under no circumstance may another party obtain, through discovery methods, an attorney's recorded thoughts and theories. *Id.* (quoting *Hickman*, 329 U.S. at 510, 67 S.Ct. 385 ("Not even the most liberal discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney.")); *see also Town of North Kingstown v. Ashley*, 118 R.I. 505, 510, 374 A.2d 1033, 1036 (1977) ("Under Rule 26(b)(2) absolute immunity from production is given only to writings which reflect an attorney's mental impressions, conclusions, opinion or legal theories.").[3]

---

**2.** At the time that *Fireman's Fund Insurance Co. v. McAlpine*, 120 R.I. 744, 391 A.2d 84 (1978), was decided, the section concerning the work-product privilege was governed by subsection (b)(2) and not (b)(3) of Rule 26 of the Superior Court Rules of Civil Procedure.

**3.** *See* footnote 2, *supra*.

A different level of protection applies to materials prepared in anticipation of litigation, or "factual" work product. *Crowe,* 891 A.2d at 842. This category covers a wider spectrum than opinion work product and encompasses *any material* gathered in anticipation of litigation. It is not necessary for the attorney to have prepared the materials or the documents for them to constitute work product. Rather, a document prepared by a party's representative or agent constitutes factual work product as long as the document was prepared in anticipation of litigation. *Cabral,* 556 A.2d at 49. The underlying rationale for this particular protection is to "prevent an attorney from 'freeloading' on his or her adversary's work." *Id.* at 48. Because factual work product does not include the actual thoughts of the attorney, it is afforded only qualified immunity from discoverability. Thus, this type of work product is subject to discovery in a situation in which "the party seeking discovery demonstrates a substantial need for the materials and that it cannot obtain the substantial equivalent without undue hardship." *Crowe,* 891 A.2d at 842; *see also Burgess v. Rhode Island Public Transit Authority,* 664 A.2d 1119, 1119 (R.I.1995) (mem.); *Cabral,* 556 A.2d at 49–50.

■ At issue here is whether the Praesidium report constitutes privileged work product. The Praesidium report falls within the second category described above—factual work product. The report does not reflect the thoughts, opinions, or conclusions of defendant's attorney. Instead, the report was produced at the behest of defendant's attorney after having learned of allegations of inappropriate sexual contact by one of defendant's employees.

In an analogous instance, when a defendant's attorney had hired an investigator to take photographs in order to rebut the plaintiff's version of events, this Court held that the surveillance materials were prepared in anticipation of litigation and hence were deemed work product. *See Cabral,* 556 A.2d at 49–50 (the materials, however, ultimately were deemed to be subject to discovery because of undue hardship to the plaintiff). Similarly, in *Ashley,* we held that "the conclusions of experts engaged in anticipation of litigation and preparation for trial are entitled to qualified immunity" because of the work-product privilege. *Ashley,* 118 R.I. at 509–11, 374 A.2d at 1036 (yet, ordering production of expert reports after undue hardship outweighed immunity).

However, a party cannot create work product solely by the nomenclature used to entitle documents. In examining the record before us, we are certain that the Praesidium report is work product as defined by and protected under Rule 26(b)(3). The letter authored by defendant's attorney reveals that the report was made in anticipation of the instant litigation. This report was made specifically at the request of defendant's general counsel. The defendant's attorney advised the YMCA Board of Directors to have an outside agency review YMCA staff polices and procedures promptly after learning that one of the YMCA's employees potentially was involved in an act of molestation. Following his recommendation, defendant hired the Praesidium Group to perform this review. The review was done and a report was produced after plaintiffs had informed defendant of their claim and after filing suit. Nothing in the record suggests that defendant previously had commissioned this sort of investigation, nor is there any indication that this investigation was solicited for any reason other than in anticipation of the impending lawsuit. We therefore conclude that the Praesidium report undoubtedly was prepared in anticipa-

tion of litigation and thus falls within the protective ambit of Rule 26(b)(3).

■ The next step in our analysis is to determine whether the protection afforded to the Praesidium report by the work-product privilege gives way to any prevailing concern that precluding the report from discovery would lead to injustice or undue hardship. The burden to demonstrate that the privileged document nevertheless is discoverable (because of (1) a substantial need of the document and (2) a resulting injustice or undue hardship from immunizing the document) lies solely with the party contesting the privilege's application. *Fireman's Fund Insurance Co.*, 120 R.I. at 754, 391 A.2d at 90.

■ The plaintiffs have failed to demonstrate a substantial need for the Praesidium report. They likewise have failed to demonstrate that they cannot obtain material equivalent to the Praesidium report without undergoing undue hardship. *Cf. Burgess*, 664 A.2d at 1119 (compelling production of a witness statement as the result of undue hardship because the transcribed witness statement was the only way to introduce evidence of the witness's account, as the witness had a "spotty" recollection during deposition); *Cabral*, 556 A.2d at 50 (deeming surveillance materials to be work product yet subject to discovery as the result of undue hardship because the photographs were to be introduced at trial to rebut the plaintiff's testimony). Although plaintiffs may have a desire to demonstrate subsequent remedial measures defendant took, it does not appear that the Praesidium report would evince any *measures* defendant took, to remedy any defectiveness. Nothing in the report itself would constitute a subsequent remedial measure; only subsequent *actions* defendant took, perhaps at the suggestion of the Praesidium Group, would amount to such discoverable measures.

Furthermore, plaintiffs still are not foreclosed from obtaining any information potentially presented in the Praesidium report from other avenues. They have the opportunity to retain their own expert to conduct a review of defendant's policies and procedures at various points in time. The plaintiffs also could gather the information, by way of interrogatories or through questions raised at deposition, about the policies and procedures in place at the YMCA at the time of the alleged molestation in contrast to those that exist now.

Because we conclude that the Praesidium report is shielded from discovery based on the work-product privilege, we need not reach the defendant's alternative argument that the report is protected by the attorney-client privilege.

### Conclusion

For the reasons stated herein, we hereby quash the order of the Superior Court. The papers in this case shall be remanded to the Superior Court.

Acting Chief Justice GOLDBERG did not participate.